**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

FIRST COLONY LIFE INS. CO.                                                                 PLAINTIFF

V.                                                             CIVIL ACTION NO. 3:05-cv-558 HTW-LRA

BOBBY L. SANFORD                                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Before the court are several motions filed by defendant Bobby L. Sanford [hereinafter Sanford]: namely, motion for partial summary judgment as to plaintiff's claim of lack of insurable interest [docket # 32]; motion for partial summary judgment as to "suspect" status [docket # 38]; and, motion to dismiss, or alternatively for partial summary judgment [docket # 33]. These summary judgment motions allegedly stand upon the authority of Rule 56(b) and (c),[1] Federal Rules of Civil Procedure. Defendant's motion to dismiss is based upon the authority of Rule 12(b)(6),[2] Federal Rules of Civil Procedure.

Also before the court is a motion by plaintiff First Colony Life Insurance Company [hereinafter "First Colony"] for summary judgment. This motion comes under Rule 56(a),[3] Federal Rules of Civil Procedure.

---

[1] Federal Rule Civil Procedure 56(b), (c) permits a defendant in a lawsuit to move at any time for summary judgment. Summary judgment is appropriate where the pleadings and supporting documents show "that there is no genuine issue as to any material fact."

[2] Federal Rule Civil Procedure 12(b)(6) provides that a defendant in a lawsuit may move for dismissal under the defense that claimant has failed to "state a claim upon which relief can be granted."

[3] Federal Rule Civil Procedure 56(a) permits a plaintiff in a lawsuit to move, "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party . . .," to move for summary judgment.

On September 13, 2005, First Colony, a corporate resident citizen of Virginia, filed this declaratory action under Title 28 U.S.C. §2201[4] against defendant Sanford, a resident citizen of Rankin County, Mississippi, seeking a determination whether First Colony was obligated to pay death benefits on the life of Emmanuel Morris to defendant Sanford.

The parties are diverse, and a demand is made in excess of this court's jurisdictional minimum; thus, this court has subject matter jurisdiction pursuant to Title 28 U.S.C. §1332.[5] Where subject matter jurisdiction otherwise exists, such as diversity jurisdiction under Title 28 U.S.C. § 1332(a), the Declaratory Judgment Act clearly authorizes this court to afford the parties declaratory relief. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). The court, having heard oral argument and being fully informed of the relevant facts and law, finds that summary judgment in favor of plaintiff is warranted, for the reasons outlined below.

---

[4]The Declaratory Judgment Act, Title 28 U.S.C. § 2201(a), states in pertinent part:
(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

[5]Title 28 U.S.C. § 1332 provides in pertinent part:

(a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States; ... .

**Facts**

Defendant Sanford is demanding life insurance policy proceeds on the life of Emmanuel Morris. Sanford says he was the legal guardian.

Defendant Sanford became involved with Emmanuel Morris [hereinafter Morris] in January, 2004, at the request of Morris' grandmother, Lorene Buckley. Morris' father was deceased, and his mother was incarcerated under a life sentence for murder. Morris was homeless at the time, and Buckley asked Sanford, who had previously ministered to troubled teenagers, to assist him. Sanford took Morris into his home and on February 13, 2004, he applied in the Chancery Court of Rankin County, Mississippi, for general guardianship over Morris. Morris also filed a petition requesting that Sanford be named as his general guardian. The Chancellor issued an order declaring Sanford as Morris' legal guardian, effective "upon his taking the oath as prescribed by statute.[6]" Sanford never took the guardianship oath; subsequently, no Letters of Guardianship were ever issued.

On May 6, 2004, Sanford went to the Youth Court of Panola County, Mississippi, and requested an emergency order naming him as the representative payee for Morris' monthly Social Security benefits. Morris received these benefits on account of his father's demise. Sanford represented himself to the court as Morris' legal guardian. This emergency order was issued.

Sanford then went to First Colony and, on August 23, 2004, obtained a life

---

[6]Miss. Code Ann. § 93-13-17 requires, in pertinent part, that before a guardian shall have authority to act, he "shall also take and subscribe an oath, at or prior to the time of his appointment, faithfully to discharge the duties of guardian of the ward according to law."

3

insurance policy in the amount of $100,000 upon Morris, naming himself [Sanford] as beneficiary. In the policy application, submitted July 12, 2004, prior to issuance of the policy itself, Sanford claimed that he was the legal guardian for Morris. Sanford made timely payments on the policy.

Morris was reported missing on January 21, 2005. His body was discovered in a ditch in Panola County, Mississippi, on February 9, 2005. The coroner listed the date of death as January 14, 2005, and the immediate cause of death as drowning. Although the death was not classified as a homicide,[7] the Panola County Sheriff's Department began an investigation into what it regarded as a suspicious death. Sanford was named as one of several possible suspects. The investigation remains open, and Sanford remains a suspect in the investigative file.[8]

On March 8, 2006, Sanford made claim to First Colony for the death benefits under the policy. In its claim investigation, First Colony subsequently discovered that Sanford never had taken the Oath of Guardianship, nor had he ever received Letters of Guardianship. First Colony then denied Sanford's claim for payment on the ground that Sanford lacked a legal relationship with Morris. First Colony now contends that Sanford did not have an insurable interest in Morris' life under state law, that he misrepresented himself as Morris's legal guardian, and that the policy was void *ab initio*.

---

[7] Morris's death certificate, issued March 29, 2005, lists the immediate cause of death as "drowning." The area used to indicate death by other than natural causes offers choices of "accident, suicide, homicide, pending investigation, or undetermined;" the death certificate lists "undetermined."

[8] Detective Whitten confirmed to First Colony's Claims Consultant in August 2005 that the case remained open and that Sanford was regarded as a suspect, but was not the only suspect.

First Colony filed this action on September 13, 2005, seeking a declaratory judgment as to whether Sanford was the legal guardian over Morris, and whether Sanford possessed an "insurable interest" in Morris' life. Sanford filed counterclaims for breach of contract, breach of fiduciary duty, negligence and gross negligence, misrepresentation and fraud, failure to reasonably investigate, illegal post claim underwriting, waiver and estoppel, failure to procure, and libel and slander.

## Summary Judgment Standard

Summary judgment is warranted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The United States Supreme Court has held that summary judgment is mandated against a party who "after adequate time for discovery and upon motion, . . . fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. The movant need not, however, furnish materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that

5

demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Summary judgment can be granted only if no genuine issue of material fact exists. Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir. 1962).

## Law and Analysis

This court has subject matter jurisdiction over this lawsuit by way of diversity of citizenship, Title 28 U.S.C. § 1332. Pursuant to the dictates of *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court is obliged to apply the substantive law of the State of Mississippi, where, as here, this dispute arose in Mississippi.

Mississippi law provides that only an individual possessing an "insurable interest" purchase or be named as beneficiary on a life insurance policy. An insurable interest must fall within the following provisions: (1) a close relation by blood or by law; (2) a lawful and substantial economic interest, such as a contract, business partnership, or interest in payment of funeral expenses; or (3) a religious, educational, charitable, or benevolent agency or institution named as a beneficiary. Miss. Code Ann. § 83-5-251(3)(a)-(e). The insurance company which issues a policy, as a defense to a claim against the policy, can raise the issue of the lack of insurable interest. *Cundiff v. Cain*, 707 So.2d 187, 190 (Miss. 1998). Where it is found that no insurable interest exists, a

policy is void *ab initio*. *Gerard v. Metropolitan Life Ins. Co.*, 167 Miss. 297, 149 So. 793, 794 (Miss. 1933) (citing *National Life & Accident Ins. Co. v. Ball*, 157 Miss. 163, 127 So. 268 (Miss. 1930).

Sanford advances several arguments to show an insurable interest. First, he argues that he possessed a legal relationship established by the petition for guardianship and subsequent court proceedings. Sanford, however, failed to complete the process. He never took the guardianship oath. The oath is essential to the process. The Chancellor never issued Letters of Guardianship. Therefore, the court finds that Sanford never became Morris' legal guardian.

Next, Sanford argues that the statute should be read to allow his claim of a "substantial relationship engendered by love and affection" to establish an insurable interest. A literal reading of the statute does not show that "love and affection," separate from a close relationship "by blood or by law," is sufficient to establish an insurable interest. Miss. Code Ann. § 83-5-251(3)(a) reads as follows: "The individual and the insured are related closely by blood or by law, a substantial interest engendered by love and affection." Sanford asks the court to read the statute as permitting a close blood or legal relationship *or* a relationship engendered by love and affection; the court does not agree. To read the statute in such a way would permit any person who feels, or claims to feel, love and affection for another to circumvent the necessity of establishing a close relationship "by blood or by law," and render the statutory requirement of such a relationship meaningless. The court therefore rejects this argument.

Finally, Sanford seeks to establish an economic interest in the continued life of

Morris, asserting both that the two had discussed a future partnership in ministry and that Sanford had assumed that Morris would care for him in Sanford's later years, as Sanford had cared for Morris in Morris' time of need.  The statute recognizes an existing economic interest, such as that established by contract, as sufficient to establish an insurable interest.  The mere possibility or expectation of a future economic relationship is not enough.  Further, while Sanford contends that he paid monies towards funeral expenses and medical bills, this voluntary assumption of costs, too, is not sufficient to establish an insurable interest.

Sanford's inability to show a legal or economic relationship sufficient to support his claim of an insurable interest necessarily prompts a subsequent conclusion:  the policy is void and unenforceable.  All premiums paid under this policy are to be returned to Sanford.  No legitimate contract was established.  Accordingly, this court finds that Sanford's claims for breach of contract and fiduciary duty must be dismissed.

Sanford's claim for "illegal post claim underwriting" is powerless to provide a cause of action separate and absent the existence of a valid contract for policy coverage.  Mississippi law defines post-claim underwriting as an insurance issuer waiting until after an insured files a claim under a policy to determine eligibility according to the presence of various risk factors.  *Wesley v. Union Nat. Life*, 919 F. Supp. 232, 235 (S.D. Miss. 1995) (citing *Lewis v. Equity Nat'l. Life Ins. Co.*, 637 So.2d 183, 188-89 (Miss. 1994).  In the case *sub judice*, the insurer does not seek to rescind the contract based on the discovery of undisclosed or unknown risk factors;  instead, it claims the contract is void *ab initio* under the public policy requirement of an insurable interest.

Sanford asserts that once his representation of himself as legal guardian was accepted and the policy was issued, First Colony was estopped from asserting a lack of insurable interest. This court disagrees. The insurable interest requirement, founded in public policy, is not a component of the contractual relationship between the parties; thus, Sanford may not assert contractual defenses of waiver or estoppel in an attempt to create or enforce a contract which is void under public policy.

Further, Mississippi law declares that an insurer is "entitled to rely on reasonable statements, declarations, and representations made by an applicant for insurance relative to the existence of an insurable interest." Miss. Code Ann. § 83-5-251, (4). No facts are argued which would serve to place First Colony on notice of a need to investigate at the time it issued the policy, or render its reliance on Sanford's representations unreasonable. Thus, Sanford's claim for failure to reasonably investigate lacks factual support.

Sanford next asserts a claim for libel and slander which is independent of the alleged contract, and is based upon First Colony's mention of Sanford as a suspect in Morris' death. First Colony contends that statements made regarding Sanford's suspect status are true and based on public information submitted by law enforcement officials investigating the death. Documents provided to this court show that no final ruling has been issued, and that Sanford remains one of a list of possible suspects.

Sanford bears the burden to show the publication of a false and defamatory statement. *Armistead v. Minor*, 815 So.2d 1189, 1193 (Miss. 2002). This is a burden he cannot meet. Truth of the matter asserted is a well established defense against both libel and slander. *Id*. at 1194. See also *Franklin v. Thompson*, 722 So.2d 688

9

(Miss. 1998); *Blake v. Gannett Co., Inc.*, 529 So.2d 595 (Miss. 1988); *Daniels by Glass v. Wal-Mart Stores, Inc.*, 634 So.2d 88 (Miss. 1993); *Fulton v. Miss. Publishers Corp.*, 498 So.2d 1215 (Miss. 1986); *Conroy v. Breland*, 189 So. 814 (Miss. 1939). These claims are therefore without merit.

## Holding

The court finds here no disputed issues of material fact which would preclude a grant of summary judgment. Further, this court finds that under the applicable law, these facts entitle defendant First Colony Insurance Company to entry of summary judgment. Sanford simply is unable to establish the requisite legal or factual basis for recovery in this suit. First Colony is to return the premiums paid to First Colony by Sanford.

Therefore, this court hereby grants First Colony's motion for summary judgment. Accordingly, all other motions now pending before this court are rendered moot and denied. The court will enter a separate final judgment in accordance with the local rules.

SO ORDERED, this the 5th day of March, 2007.

s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE

Memorandum Opinion and Order
Civil Action No. 3:05-cv-558 HTW-LRA